IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MICFO, LLC, | ) | |
| Plaintiff, | ) ) | CASE NO.: 2:18-cv-01653-DCN |
| | ) | |
| vs. | ) ) | |
| Victoria Latham and Erin Larkin, | ) ) | **DEFENDANT LATHAM'S ANSWER COUNTER-CLAIMS AND THIRD-PARTY COMPLAINT** |
| Defendants, | ) | |
| _____ | ) ) | |
| Victoria Latham, | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Amir Golestan, Individually, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |
| _____ | ) | |

NOW COMES the Defendant Latham, by and through her undersigned counsel, and submits the following Answer and Counterclaim to the Plaintiff, MICFO, LLC:

1.    Defendant admits the allegations of paragraph 1.

2.    Defendant admits the allegations of paragraph 2.

3.    Defendant admits the allegations of paragraph 3.

4.    Paragraph 4 is a conclusion of law and does not require a response.

5.    Paragraph 5 is a conclusion of law and does not require a response.

6.    Defendant admits the allegations of paragraph 6.

7.    Defendant admits that Plaintiff conveys to its customers that it is in the business of global dispersed cloud platforms and has insufficient knowledge regarding the remaining allegations.

1

8.    Defendant believes that Plaintiff is engaging in potentially fraudulent and/or criminal activities, and does not believe Plaintiff is a credible source to describe the business it is involved in.  Further, Defendant believes paragraph 8 does not require a response, but to the extent it does, the same is denied.

9.    Defendant believes that Plaintiff is engaging in potentially fraudulent and/or criminal activities, and does not believe Plaintiff is a credible source to describe the business it is involved in.  Further, Defendant believes paragraph 9 does not require a response, but to the extent it does, the same is denied.

10.    Defendant believes that Plaintiff is engaging in potentially fraudulent and/or criminal activities and does not believe Plaintiff is a credible source to describe the business it is involved in or as to what its policies and procedures are.  Defendant further believes that federal laws protect whistleblowers as immune from civil liability from disclosing fraudulent and/or criminal activity to the proper authorities.  Further, Defendant believes paragraph 10 does not require a response, but to the extent it does, the same is denied.

11.    The allegations of paragraph 11 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

12.    The allegations of paragraph 12 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

13.    The allegations of paragraph 13 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

14.    The allegations of paragraph 14 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

15.     The allegations of paragraph 15 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

16.     The allegations of paragraph 16 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

17.     The allegations of paragraph 17 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

18.     The allegations of paragraph 18 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

19.     The allegations of paragraph 19 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

20.     The allegations of paragraph 20 do not apply to this Defendant, thus, no answer is required.  However, to the extent an answer is required, the same is denied.

21.     Defendant admits the allegations of paragraph 21.

22.     Defendant admits to executing an offer of employment and agreeing to abide by the policies and procedures of Micfo, LLC.  Moreover, Defendant further admits that Plaintiff Micfo's policies and procedures do not require Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 22 are denied.

23.     Defendant admits to executing Confidentiality and Nondisclosure Agreement and that the terms of said Agreement speaks for itself.  Moreover, Defendant further admits that Plaintiff Micfo's policies and procedures do not require Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor

do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities. Any remaining allegations of paragraph 23 are denied.

24.     Defendant denies the allegations of paragraph 24.

25.     Defendant admits only so much of the allegations of paragraph 25 as alleges that she believes Plaintiff was engaged in criminal and/or fraudulent activity and that Plaintiff was requiring Defendant to engage in said illicit activity so as to allow Defendant to take the fall when said activity was discovered by internet provider and/or law enforcement authorities and/or Plaintiff's clients. Defendant further admits that she has never disclosed any said documentation enumerated in paragraph 25 to any third party other than the Federal Bureau of Investigation and/or her attorneys. Any remaining allegations of paragraph 25 are denied.

26.     Defendant admits only so much of the allegations of paragraph 26 as alleges that she believes Plaintiff was engaged in criminal and/or fraudulent activity and that Plaintiff was requiring Defendant to engage in said illicit activity so as to allow Defendant to take the fall when said activity was discovered by internet provider and/or law enforcement authorities and/or Plaintiff's clients. Defendant further admits that she has never disclosed any said documentation enumerated in paragraph 26 to any other third party other than the Federal Bureau of Investigation and/or her attorneys. Any remaining allegations of paragraph 26 are denied.

27.     Defendant admits only so much of the allegations of paragraph 27 as alleges that she believes Plaintiff was engaged in criminal and/or fraudulent activity and that Plaintiff was requiring Defendant to engage in said deceitful activity so as to allow

Defendant to take the fall when said activity was discovered by internet provider and/or law enforcement authorities and/or Plaintiff's clients. Defendant further admits that she has never disclosed any said documentation enumerated in paragraph 27 to any other third party other than the Federal Bureau of Investigation and/or he attorneys. Any remaining allegations of paragraph 27 are denied.

28.     Defendant denies the allegations of paragraph 28 and admits only to utilizing the incognito window on her Google Chrome browser.

29.     Defendant admits the allegations of paragraph 29.

30.     Defendant admits that on May 24, 2018, Defendant discovered that Plaintiff had utilized illicit means to break into Defendant's Google Email and Google Drive Accounts, accessing the private information of Defendants and others, and further that Plaintiff would refuse to take ownership of a storage unit Micfo asked her to open for storage and was leaving Defendant to pay or owe the bill for said storage, while Plaintiff received free storage of its items. In said communication, Defendant reserved any and all legal rights against Plaintiff, which she is hereby asserting in this action as a counterclaim.

31.     Defendant admits the allegations of paragraph 31.

32.     Defendant admits that Plaintiff has been forwarding threatening messages to Defendant causing her to fear for her safety. Defendant denies that Plaintiff served Defendant with any communication prohibiting her from communicating with and/or cooperating with law enforcement authorities about any alleged fraud or crimes committed by Plaintiff. Any remaining allegations of paragraph 32 are denied.

33.     Defendant reiterates and realleges the Defendant's answers in paragraphs 1-32.

34.     Defendant denies that any documents referenced in paragraph 34 constitute trade secrets as defined by federal or state law.  Defendant admits that said documents contain information of alleged fraudulent and criminal activity of Plaintiff.  The remaining allegations of paragraph 34 are denied.

35.     Upon information and belief the information and computer files of Micfo show Plaintiff's fraudulent and/or criminal creation of fraudulent shell companies, businesses, and/or the theft of individual identities fraudulently associated with said businesses, which are all actually alter-egos of Micfo and Golestan and used by Micfo and Golestan as a possible vehicle for the following potential deceitful activities: hiding and/or laundering money; defrauding its customers and/or potential investors into believing that Plaintiff has a network of independent business affiliates ("channel partners") that are actually non-existent; in defrauding vendors into providing services for non-existent companies in order to avoid paying those vendors for services; engaging in fraudulent tax evasion schemes; and/or spreading the risk of any one company being shut down when it is discovered that Plaintiff leases IP addresses to VPN users whom engage in criminal and/or illicit activities.  Any remaining allegations of paragraph 35 are denied.

36.     Defendant denies the allegations of paragraph 36.

37.     Defendant denies the allegations of paragraph 37.

38.     Defendant denies the allegations of paragraph 38.

39.     Defendant admits that Defendants had a duty to disclose any alleged fraudulent and/or criminal activity of Plaintiff to the proper authorities and that neither Plaintiff's policies and procedures, nor its agreements comply with federal law requiring disclosure of the same to Plaintiff's employees. Any remaining allegations of paragraph 38 are denied.

40.     Defendant denies the allegations of paragraph 39.

41.     Defendant has turned over any and all materials in her possession to the Federal Bureau of Investigation.  Defendant has also turned over any and all materials to her attorney in order to defend herself in this action.   Any remaining allegations are denied.

42.     Defendant denies the allegations of Paragraph 43.

43.     Defendant reiterates and realleges the Defendant's answers in paragraphs 1-42.

44.     Defendant denies that any documents referenced in paragraph 43 constitute trade secrets as defined by federal or state law.  Defendant admits that said documents contain information of alleged fraudulent and criminal activity of Plaintiff.  The remaining allegations of paragraph 43 are denied.

45.     Defendant believes that the information and computer files of Micfo show Plaintiff's fraudulent and/or criminal creation of fake companies and businesses, which are actually alter-egos of Micfo used by Micfo as a vehicle for hiding and laundering money; in defrauding its customers and/or potential investors into believing that Plaintiff has a network of business affiliates that are actually non-existent; in defrauding vendors into providing services for non-existent companies in order to avoid paying vendors for

services; and to engage in fraudulent tax evasion schemes.  Any remaining allegations of paragraph 44 are denied.

46.     Upon information and belief the information and computer files of Micfo show Plaintiff's fraudulent and/or criminal creation of fraudulent shell companies, businesses, and/or the theft of individual identities fraudulently associated with said businesses, which are all actually alter-egos of Micfo and Golestan and used by Micfo and Golestan as a possible vehicle for the following potential deceitful activities: hiding and/or laundering money; defrauding its customers and/or potential investors into believing that Plaintiff has a network of independent business affiliates ("channel partners") that are actually non-existent; in defrauding vendors into providing services for non-existent companies in order to avoid paying those vendors for services; engaging in fraudulent tax evasion schemes; and/or spreading the risk of any one company being shut down when it is discovered that Plaintiff leases IP addresses to VPN users whom engage in criminal and/or illicit activities.  Any remaining allegations of paragraph 35 are denied.

47.     Defendant admits that Defendants had a duty to disclose any alleged fraudulent and/or criminal activity of Plaintiff to the proper authorities and that neither Plaintiff's policies and procedures, nor its agreements comply with federal law requiring disclosure of the same to Plaintiff's employees. Any remaining allegations of paragraph 46 are denied.

48.     Defendant denies the allegations of paragraph 47.

49.     Defendant has turned over any and all materials in her possession to the Federal Bureau of Investigation.  Defendant has also turned over any and all materials to

her attorney in order to defend herself in this action.  Any remaining allegations are denied.

50.    Defendant denies the allegations of paragraph 49.

51.    Defendant denies the allegations of paragraph 50.

52.    Defendant reiterates and realleges the Defendant's answers in paragraphs 1-52.

53.    Defendant is unaware of having possession of any said documents referenced in paragraph 53.

54.    Defendant has insufficient information regarding the allegations of paragraph 54 and therefore denies the same.

55.    Defendant denies the allegations of paragraph 55.

56.    Defendant denies the allegations of paragraph 56.

57.    Defendant reiterates and realleges the Defendant's answers in paragraphs 1-57.

58.    Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 58 are denied.

59.    Defendant denies the allegations of paragraph 59.

60.    Defendant denies that any materials in her possession are trade secret but does admit that any such materials are evidence of the alleged criminal and/or fraudulent activities of Plaintiff. Any remaining allegations of paragraph 60 are denied.

61.    Defendant denies that any materials in her possession are trade secret but does admit that any such materials are evidence of the alleged criminal and/or fraudulent activities of Plaintiff and that the same have only been shared with the Federal Bureau of Investigation and the Defendant's attorney. Any remaining allegations of paragraph 61 are denied.

62.    Defendant denies the allegations of paragraph 62.

63.    Defendant denies that any materials in her possession are trade secret but does admit that any such materials are evidence of the alleged criminal and/or fraudulent activities of Plaintiff and that the same have only been shared with the Federal Bureau of Investigation and the Defendant's attorney. Any remaining allegations of paragraph 63 are denied.

64.    Defendant denies that any materials in her possession are trade secret but does admit that any such materials are evidence of the alleged criminal and/or fraudulent activities of Plaintiff and that the same have only been shared with the Federal Bureau of Investigation and the Defendant's attorney. Any remaining allegations of paragraph 64 are denied.

65.    Defendant denies the allegations of paragraph 65.

66.    Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 66 are denied.

67.    Defendant denies the allegations of paragraph 67.

68.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 68 are denied.

69.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 69 are denied.

70.     Defendant reiterates and realleges the Defendant's answers in paragraphs 1-70.

71.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 71 are denied.

72.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 72 are denied.

73.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 73 are denied.

74.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 74 are denied.

75.     Defendant denies the allegations of paragraph 75.

76.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 76 are denied.

77.     Defendant denies the allegations of paragraph 77.

78.     Defendant reiterates and realleges the Defendant's answers in paragraphs 1-78.

79.     Defendant denies that any such agreement prohibits Defendant from requiring Defendant to engage in criminal and/or fraudulent activity as a condition of employment with Micfo, nor do said policies and procedures prohibit the disclosure of

alleged fraudulent and criminal activity to the appropriate authorities.  Any remaining allegations of paragraph 79 are denied.

80.    Defendant denies the allegations of paragraph 80.

81.    Defendant admits that she did not tell Plaintiff that she obtained documents evidencing Plaintiffs' alleged fraudulent and criminal activities.  Any remaining allegations of paragraph 81 are denied.

82.    Defendant denies the allegations of paragraph 82.

83.    Defendant denies the allegations of paragraph 83.

84.    Defendant denies the allegations of paragraph 84.

85.    Defendant reiterates and realleges the Defendant's answers in paragraphs 1-85.

86.    Defendant denies the allegations of paragraph 86.

87.    Defendant denies the allegations of paragraph 87.

88.    Defendant denies the allegations of paragraph 88.

89.    Defendant reiterates and realleges the Defendant's answers in paragraphs 1-89.

90.    Defendant denies that providing evidence of alleged crime and fraud to the Federal Bureau of Investigation is an actionable violation of the alleged act.  Any remaining allegations of paragraph 90 are denied.

91.    The Act in question is not intended to protect the Plaintiff from investigation into its alleged fraud and crimes.  Any remaining allegations of paragraph 91 are denied.

92.    The Act in question is not intended to protect the Plaintiff from investigation into its alleged fraud and crimes.  Any remaining allegations of paragraph 92 are denied.

93.     The Act in question is not intended to protect the Plaintiff from investigation into its alleged fraud and crimes.  Any remaining allegations of paragraph 93 are denied.

94.     Paragraph 94 does not apply to this Defendant, so an answer is not required.  To the extent one is required, it is denied.

95.     Defendant denies the allegations of paragraph 95.

96.     Defendant denies the allegations of paragraph 96.

97.     Defendant denies the allegations of paragraph 97.

98.     Defendant reiterates and realleges the Defendant's answers in paragraphs 1-98.

99.     Defendant admits only so much of paragraph 99 as alleges that Plaintiff required Plaintiff to engage in allegedly criminal and fraudulent activity as a condition of employment.  Plaintiff intended on using Defendant's access to said information to frame Defendant as a perpetrator of said alleged fraudulent and criminal activity.  Defendant provided evidence of said crimes to the proper law enforcement authorities.  Defendant denies the remaining allegations of paragraph 99.

100.    Defendant admits only so much of paragraph 100 as alleges that Plaintiff required Plaintiff to engage in allegedly criminal and fraudulent activity as a condition of employment.  Plaintiff intended on using Defendant's access to said information to frame Defendant as a perpetrator of said alleged fraudulent and criminal activity.  Defendant provided evidence of said crimes to the proper law enforcement authorities.  Defendant denies the remaining allegations of paragraph 100.

101.    Defendant denies the allegations of paragraph 101.

102.    Defendant denies the allegations of paragraph 102.

103.    Defendant reiterates and realleges the Defendant's answers in paragraphs 1-103.

104.    Defendant admits only so much of paragraph 104 as alleges that Plaintiff had a duty not to require Plaintiff to engage in criminal and/or fraudulent activity as a condition of employment nor to prevent Defendant from reporting criminal and/or fraudulent activity to the proper law enforcement authorities.  The remaining allegations of paragraph 104 are denied.

105.    Defendant denies the allegations of paragraph 105.

106.    Defendant denies the allegations of paragraph 106.

107.    Defendant denies the allegations of paragraph 107.

108.    Defendant denies the allegations of paragraph 108.

109.    Defendant denies each and every allegation of the Plaintiff's Complaint not heretofore denied.

## FOR A FIRST AFFIRMATIVE DEFENSE
### (Failure to Comply with Defense of Trade Secrets Act)

110.    That pursuant to U.S. Code Sec. 1833, Defendants have complete immunity as to all claims, since Defendants provided any and all information of Plaintiff to the Federal Bureau of Investigation.  Moreover, Plaintiff has failed to provide sufficient notice of Defendants' rights to report criminal activity pursuant to U.S. Code Sec. 1833, which provides complete defenses to Plaintiff's requests for attorney's fees and punitive damages.

### FOR A SECOND AFFIRMATIVE DEFENSE
### (Failure to State Facts Sufficient)

111.    Plaintiff has failed to plead sufficient facts to form a cause of action, pursuant to FRCP 12.

### FOR A THIRD AFFIRMATIVE DEFENSE
### (Comparative Negligence)

112.    That the injuries and damages sustained by the plaintiff, if any, were due to and caused by and were the direct and proximate result of the negligence, carelessness, recklessness, willfulness and wantonness of the plaintiff, and recovery should be barred or reduced in proportion to plaintiff's negligence as provided by law.

### FOR A FOURTH AFFIRMATIVE DEFENSE
### (Waiver)

113.    That the plaintiff, by his actions and conduct, has waived his right to sue the defendants and his Complaint shall be barred as a matter of law.

### FOR A FIFTH AFFIRMATIVE DEFENSE
### (Estoppel by Conduct)

114.    That the plaintiff by his actions, conduct, words or silence which amounts to a representation or other concealment of material facts, has caused the defendants to alter their position to his prejudice or injury and plaintiff should therefore be estopped from bringing the within claims by his own conduct and such constitutes a complete defense to the claims of the plaintiff.

### FOR A SIXTH AFFIRMATIVE DEFENSE
### (Unclean Hands)

115.    That to the extent that the plaintiff was negligent, grossly negligent, willful, wanton and reckless, resulting in the damages allegedly sustained by the plaintiff, the plaintiff comes to Court with unclean hands and such inequitable conduct on the part of

the plaintiff constitutes a bar and complete defense to any claim for equitable relief in the form of indemnity.

### FOR A SEVENTH AFFIRMATIVE DEFENSE
### (Sole Negligence of Plaintiff and Others)

116.    That the allegations of negligence alleged by plaintiff are due only to the sole negligence and others and therefore bars Plaintiff's claims against these Defendants.

### FOR AN EIGHTH AFFIRMATIVE DEFENSE
### (Punitive Damages Unconstitutional - Substantive Due Process)

117.    That the plaintiff's Complaint to the extent that it seeks punitive or exemplary damages, violates this defendant's right to substantive due process as provided in the Fifth and Fourteenth Amendments of the United States Constitution and the Constitution of the State of South Carolina, and therefore fails to state a cause of action upon which either exemplary or punitive damages can be awarded.

### FURTHER ANSWERING THE COMPLAINT BY WAY OF AN AFFIRMATIVE DEFENSE AND COUNTERCLAIM AND THIRD-PARTY COMPLAINT AGAINST PLAINTIFF MICFO, LLC, AND THIRD-PARTY DEFENDANT GOLESTAN, INDIVIDUALLY, THE DEFENDNAT ALLEGES AND SAYS:

### FACTUAL RECITATION

118.    Defendant reiterates and realleges the Defendant's answers in paragraphs 1-118.

119.    Plaintiff Micfo, LLC, a Nevada entity, headquartered in Charleston, SC, is engaged in cloud platform fog and edge applications. Upon information and belief, Amir Golestan is the sole member and/or majority owner of Micfo, LLC.

120.    Defendant Victoria Latham, a Charleston County resident, was an employee of Micfo, LLC, for two years.  Her position was personal assistant to Amir

Golestan, and Accounts Payable representative, until she was defamed and wrongfully terminated by Plaintiff.

121.    As an Executive Assistant, Latham's job was to pay bills and vendors for both Micfo, LLC, and its "Channel Partners".

122.    In its most basic sense, channel partners function as an auxiliary marketing and sales team for technology companies by connecting customers to a vendor's products. They typically have access to a target customer base the vendor cannot reach on its own. This situation provides the vendor a broader customer reach and earns the partner some sort of revenue for opening up new channels.

123.    Edge computing is a "mesh network of micro data centers that process or store critical data locally and push all received data to a central data center or cloud storage repository, in a footprint of less than 100 square feet," according to research firm IDC.

124.    Fog computing refers to the network connections between edge devices and the cloud. Edge, on the other hand, refers more specifically to the computational processes being done close to the edge devices. So, fog includes edge computing, but fog would also incorporate the network needed to get processed data to its final destination.

125.    According to Plaintiff/Golestan, it is important to create a network of channel partners, in specific hyper-local locations around the country and/or world, so as to establish this mesh network of micro data centers.

126.    In this case, the "mesh network" serves two purposes for Plaintiff/Golestan. First, Plaintiff specifically represents to its customers that their internet/website service is

safe from failure due to a diverse number of IP addresses from different Channel Partners, and, thus, different servers, being re-directed to service the client's website.  If one server and/or IP address fails or becomes disrupted, then there are other servers and/or IP addresses that will serve the website and leave service uninterrupted.  The fact that Plaintiff's clients perceives different "Channel Partners" (i.e. the client assumes each channel partner is an independent and separate companies) as providing these services, gives the client a sense of security.

127.    Second, a large portion of Plaintiff's clients are virtual private network ("VPN") companies.  Significant portions of a VPN's clients typically seek to remain anonymous.  Often times, companies with IP Addresses seeking to remain anonymous by virtue of VPN, are engaged in suspicious business activity involving spam at one end of the spectrum and criminal activity at the other end of the spectrum.

128.    Upon information and belief, Plaintiff has been cited and/or disciplined in the past by the American Registry for Internet Numbers ("ARIN") for leasing its IP addresses to customers engaged in similar activities.

129.    Upon information and belief, Plaintiff attempted to fraudulently grow its channel partner network by creating sham, or straw, "Channel Partners". These sham companies have non-existent individuals listed as the officers of these companies.  For example, two of Plaintiff's Channel Partners, Oppobox and Fiber Galaxy, are actually pure alter-egos of Plaintiff.  The officers of Oppobox and Fiber Galaxy, respectively Kevin Chang and Pooya Torabi, are not real people, despite the fact that these straw persons have apparent authority to act for these entities.  Emails to Chang and Torabi are actually received by officers of Micfo.  When Chang and Torabi send emails, they are actually

generated by officers of Plaintiff.  It is believed that Plaintiff has approximately ten alter ego "Channel Partners" that it fraudulently misrepresents to the world as being separate and independent companies, run by real existing people not associated with Plaintiff.

130.    Upon information and belief, these sham "Channel Partners" solve at least two problems for Plaintiff.  They provide Plaintiff's clients with a false sense of security, while Plaintiff retains all the profits and fees for the services of those "Channel Partners", and it diversifies Plaintiff's risk if ARIN revokes certain agreements, licensures, and/or IP addresses of Plaintiff or its Channel Partners.  Given the diversification of Channel Partners, if one gets shut down, then the remaining undisciplined Channel Partners and/or Plaintiff can continue to provide uninterrupted connectivity services to these illicit web companies (i.e. spam or criminal enterprises), or even legitimate clients, and continue to profit from the same.

131.  Upon information and belief, Plaintiff has either terminated and/or wrongfully and constructively terminated other employees within the past six months who have either discovered or asked questions about Plaintiff's fraudulent business practices.

132.    Plaintiff references a certain Micfo, LLC, Confidentiality, Non-Compete, and Non-Solicitation Agreement, dated December 15, 2016.  That Agreement failed to include language required by the Defense of Trade Secrets Act, signed into law on May 11, 2016, which would require Plaintiff to notify employees that they are immune from civil liability for an alleged breach of said Agreement for the purposes of disclosing potentially criminal and/or fraudulent activity to the proper authorities.  Not providing this notice to Plaintiff's employees provides a benefit to Plaintiff.

133.    In November 2017, Latham first became concerned with the legality of Micfo's business practices when Plaintiff demonstrated a sudden, inexplicable inability to pay its bills.  Defendant Latham was personally undergoing physical and mental stress from fending off angry debt collectors of both Plaintiff and its "Channel Partners".  Latham would often have no legitimate excuse why bills were not getting paid and Plaintiff would often ask Latham to knowingly lie to vendors/debt collectors.

134.    In an attempt to assure Latham that there was nothing out of the ordinary, Plaintiff informed Defendant that the financial shortage was due to Micfo's alleged purchase of its "Channel Partner" Oppobox, which was to occur in April 2018.

135.    Defendant Latham realized that, between November 2017, and April 2018, Golestan, individually, was spending immense amounts of personal money, including the purchase of a $3.96 million-dollar downtown home, featured in a news article in the Post and Courier on February 13, 2018.[1]

136.    In April 2018, Micfo's alleged purchase of Oppobox never occurred.  During this same time, Micfo and its "Channel Partners" continued with their inability to pay their vendors/creditors, whom Latham was continually forced to fend off.

137.    During this time, Micfo required Defendant Latham to create letters of authorization ("LOA") on the letter head of various "Channel Partners" to release certain IP numbers, or blocks of IP numbers to clients.  Latham was asked to use pdf tools to cut and paste the signatures of Kevin Chang and Pooya Torabi, among others, and affix those signatures to LOA's and other "Channel Partner" documents and to receive and

---

[1] See https://www.postandcourier.com/business/downtown-charleston-home-sells-for-million-to-tech-entrepreneur/article_f84cf2da-0dd7-11e8-b04f-c3f90dae1233.html

process subpoenas and to pursue accounts receivable for channel partners, all without communicating with these "Channel Partners" and/or without having express authority from these "Channel Partners" to act on their behalves.

138.    At the time, Defendant Latham began to believe these events may constitute circumstantial evidence of suspicious and/or criminal activity but was without actual knowledge that these entities were fraudulent shell companies or otherwise what the illicit, fraudulent, or criminal activity was.

139.    Plaintiff continued to require Latham to create fraudulent documents for these sham "Channel Partners".  As the employee responsible for creating most of these fraudulent documents and given the financial instability of Plaintiff and its "Channel Partners", and, further, given the fact that other Micfo employees were now questioning the legality of Plaintiff's business practices for other tangentially related reasons, Latham began to fear that she was being set up by Plaintiff to take the fall for its illicit activities, if discovered.

140.    Plaintiff began to research company files, which she had been give access to, as Executive Assistant, as she was the custodian of passwords to these files.  Upon information and belief, evidence in these files suggested, that Plaintiff and/or its officers, including owner Golestan, were the owners of financial accounts, held out to be those of "Channel Partners".  It appeared to Latham that either the "Channel Partners" were fraudulent and were the alter egos of Plaintiff or Golestan, and/or Plaintiff was illicitly and without authority consummating financial transactions in the name of these "Channel Partners", all without express written authorization, and likely in breach of implicit legal and/or fiduciary obligations of Plaintiff.

141.   Upon information and belief, the individual names of some officers of these "Channel Partners" may be stolen and/or misappropriated uses of individual identities without those persons knowledge and/or authorization.

142.   Defendant did download these files so as to provide evidence to the proper authorities that Plaintiff was engaged in criminal activity.

143.   Subsequent to downloading this information, Latham requested from Plaintiff proof that the Plaintiff was not requiring her to engage in criminal activity.  Plaintiff assured her she was not engaged in criminal activity, but still, suspiciously, refused to provide her her with written documentation to confirm the same.

144.   As a direct and proximate result of Latham's inquiry into Plaintiff's alleged fraudulent, criminal, and/or illicit business activities, and refusal to continue engaging in the same, Plaintiff retaliated against Defendant and/or wrongfully terminated her.

145.   Prior to and subsequent to Latham's termination, Plaintiff and/or Third-Party Defendant engaged in the following patterns of conduct aimed at trying to improperly influence Latham:

a.   Sending defamatory/libelous electronic communications to all Micfo employees, falsely accusing Plaintiff: of violating company policy of security, privacy, and confidentiality; of putting the integrity of the company at risk; of making unauthorized copies of Plaintiff's confidential information;

b.   Sending harassing and intimidating text messages to Latham, threatening to file baseless lawsuits; and/or

c.    Threatening to utilize Plaintiff/Third-Party Defendant's illicitly obtained personal confidential and financial information against them in retaliation.

146.    Upon information and belief, Plaintiff and/or Third-Party Defendant have engaged in a similar course of conduct (retaliation, wrongful termination, slander, libel, intimidation, harassment, abuse of process, malicious prosecution) against other employees of Plaintiff in a pattern of intimidation and harassment aimed at protecting their unfair and fraudulent business practices.

147.    Further, prior to Plaintiff's termination of Latham, Plaintiff and/or Third-Party Golestan, did use illicit means (i.e. In the early morning hours, Plaintiff and Golestan broke into Latham's work computer to obtain her personal passwords, and used her personal words to access her personal information from Plaintiff/Golestan's personal work computer), to hack into Latham's personal email account and/or internet files, and/or personal cloud storage, providing Plaintiff and Third-Party Defendant with unauthorized access to Latham's personal information, including messages, financial information, photographs, etc.

148.    Further, Plaintiff and/or Third-Party Defendant opened a storage unit to store Golestan's personal affects. When Plaintiff/Golestan's credit cards were revoked, Plaintiff required Latham, as a condition of her job, to open an account for a storage facility so that Golestan could continue to store his personal affects there.  Latham has not been reimbursed for this account or the monies she has personally paid, the storage account is still open in Latham's name, Golestan's affects are still in the storage unit, and neither

Plaintiff nor Third-Party Defendant will respond to Latham's requests to reimburse her and/or assume the storage unit.

149.    Lastly, Latham still has unpaid wages, late paid wages, and/or delayed payment of wages, due to insufficient funds, which she is entitled to as a matter of law, and which are further identified and set forth in co-defendant Larkin's counterclaim.

## FOR A FIRST CAUSE OF ACTION
### (Wrongful Termination)

150.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

151.    Latham was an employee of the Plaintiff as defined in S. C. Code Ann. Sec. 41-10-10(1) (SCPWA).

152.    As a requirement of her job, Latham was required by Plaintiff and/or Golestan to engage in criminal and/or fraudulent activity, which could expose her to criminal and/or civil liability from third-parties.

153.    It is against public policy to require an employee to engage in fraudulent and/or criminal activity as a condition of employment.

154.    Latham refused to continue engaging in said engage in forging the names of legal entities whose identities have been stolen without evidence or are either non-existent.

155.    Latham was wrongfully terminated in retaliation for asking questions, asking for proof, and otherwise refusing to turn a blind eye to Plaintiff and Golestan's alleged criminal and/or fraudulent activity.

156.    Plaintiff has suffered actual and consequential damages as a result of Plaintiff and Golestan's illicit actions, entitling her to those actual incurred damages and

losses, punitive damages, reasonable attorney's fees, and the costs of this action, as well as any other legal or equitable remedies to be determine by the trier of fact.

## FOR A SECOND CAUSE OF ACTION
### (Violation of S.C. Code Ann. § 39-5-10 *et seq.*)

157.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

158.    Upon information and belief, Plaintiff and Golestan employed an unfair or deceptive trade practice in continually failing to comply with South Carolina payment of wages laws and requirements for employers, in forcing Latham to engage in potentially fraudulent and/or criminal activity at the expense of her job, and in using intimidation tactics and malicious lawsuits to force her to keep quiet about Plaintiff's illicit business practices.

159.    Upon information and belief, such unfair and deceptive trade practices would act to damage the public by affecting present and future employees of Plaintiff.

160.    Plaintiff's and Golestan's actions are capable of repetition and were in fact repeated by Plaintiff and Golestan during Latham's employment.

161.    Upon information and belief, Plaintiff's and Golestan's violation of the South Carolina Unfair Trade Practices Act entitles Latham to an award of treble damages and attorneys' fees.

162.    As a direct and proximate result of Plaintiff's and Golestan's violation of the South Carolina Unfair Trade Practices Act, Latham has suffered actual, resulting, and consequential damages in an amount to be determined by the trier of fact.

## FOR A THIRD CAUSE OF ACTION
### (Conversion)

163.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

164.    Latham has an interest in the wages taken by Plaintiff and Golestan. Plaintiff and Golestan have converted Latham's funds to their own use to store their personal affects.

165.    Plaintiff and Golestan have converted Latham's monies to their own uses, without the permission of Latham.

166.    As a direct and proximate result of Plaintiff's and Golestan's conversion, Latham has suffered actual, resulting, and consequential damages in an amount to be determined by the trier of fact.

## FOR A FOURTH CAUSE OF ACTION
### (Quantum Meruit/Unjust Enrichment)

167.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

168.    Latham conferred a benefit on Plaintiff and Golestan for which both Plaintiff and Golestan and Latham justifiably believed and reasonably anticipated that Latham would be paid for, in terms of employment services and providing storage space.

169.    Latham has not been paid for the same and it would be unjust for Plaintiff and Golestan to retain that benefit without compensating Latham.

170.    Latham has suffered actual and consequential damages as a direct and proximate result of the same and is entitled to judgement as a matter of law.

## FOR A FIFTH CAUSE OF ACTION
### (Declaratory Judgment)

171.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

172.    There is a justiciable dispute between the parties, warranting declaratory judgment under 28 U.S.C. §2201.

173.    Latham is paying for a storage unit for the benefit of Plaintiff and/or Golestan and has not been paid for the same.

174.    Latham wishes to cease paying on the storage unit, which in turn will leave Plaintiff and/or Golestan's property abandoned.

175.    Latham seeks declaratory judgment that she has no obligation to Plaintiff and/or Golestan to continue paying for said storage unit and that she is not liable for the subsequent abandonment of said personal property.

## FOR A SIXTH CAUSE OF ACTION
### (Defamation/Libel/Slander)

176.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

177.    Plaintiff and Golestan have libeled and slandered Latham by falsely accusing her of violating company policy, impugning the integrity of the company, and stealing company secrets and information for an illicit and nefarious purpose.

178.    Plaintiff and Golestan in making these defamatory remarks, again refused to provide the federally required notice to all employees that there is civil immunity for employees seeking to report criminal and/or fraudulent activities to the proper authorities.

179.    Plaintiff's and Golestan's defamation has caused Latham mental and emotional distress, anxiety, humiliation, embarrassment, and injured her character and reputation, and affecting her future employability.

180.    Latham is neither a public figure nor a public official.

181.    Plaintiff and Golestan have not acted under the auspices or protections of any privileges, qualified, absolute, or otherwise.

182.    Plaintiff and Golestan have acted with malice.

183.    Plaintiff and Golestan have acted with knowledge that the above mentioned defamatory statements concerning Latham were false or has published the above mentioned defamatory statements with reckless disregard of whether the statements were false or not.

184.    As a result of Plaintiff's and Golestan's defamation of Latham, Plaintiff is entitled to judgment against Plaintiff and Golestan for an appropriate amount of actual, consequential, special and punitive damages, in an amount to be determined by the trier of fact.

## FOR A SEVENTH CAUSE OF ACTION
### (Invasion of Privacy)

185.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

186.    Plaintiff and Golestan intentionally intruded into the private affairs of Plaintiff including using illicit means to hack into her private digital information, emails, cloud storage accounts, and obtain copies of her private financial information, communications, and photos.

187.    Plaintiff and Golestan have acted with malice.

188.    Plaintiff and Golestan have wrongfully and intentionally intruded into the private affairs of Latham in a substantial and unreasonable manner that is of a nature that would cause mental injury to a person of ordinary sensibilities.

189.    As a result of Plaintiff and Golestan's invasion of Latham's privacy, Latham has suffered emotional distress, mental upset, and other damages.

190.    As a result of Plaintiff and Golestan's invasion of her privacy, Latham is entitled to judgment for an appropriate amount of actual and punitive damages.

## FOR AN EIGHTH CAUSE OF ACTION
### (Outrage/Intentional Infliction of Emotional Distress)

191.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

192.    Plaintiff and Golestan have intentionally and recklessly inflicted severe emotional distress on Latham while being certain or substantially certain that such distress would result from their conduct.

193.    Plaintiff and Golestan's conduct has been and continues to be so extreme and outrageous as to exceed all possible bounds of decency and should be regarded as atrocious and utterly intolerable.

194.    Plaintiff and Golestan's relentless attacks on Latham have caused and continue to cause Latham mental and emotional distress that is so severe no reasonable person could be expected to endure it.

195.    As a result of Plaintiff and Golestan outrageous conduct, Latham is entitled to judgment against Plaintiff and Golestan for an appropriate amount of actual and punitive damages.

## FOR A NINTH CAUSE OF ACTION
**(Alter Ego/Amalgamation/Veil Piercing)**

196.    Latham hereby restates each and every allegation contained in the preceding paragraphs as if fully set forth herein.

197.    Upon information and belief, Golestan organized, or caused to be organized, Plaintiff, and is the sole member.

198.    Upon information and belief, Golestan has failed to follow the necessary company formalities, as required by law, and has undercapitalized Plaintiff and siphoned company funds for personal use, used company facilities and employees for personal ends, and has otherwise so intermingled his personal and financial affairs with Plaintiff's that it has become the alter ego of Golestan.

199.    Upon information and belief, the alter ego relationship between Plaintiff and Golestan entitles Latham to pierce the veil and/or disregard the company form and recover against the individual member.

200.    Upon information and belief, the alter ego relationship between Plaintiff and Golestan is so amalgamated that Latham is entitled to disregard the company form and recover against Golestan individually.

## FOR A TENTH CAUSE OF ACTION
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

201.    Latham hereby restates each and every allegation contained in the preceding paragraphs as if fully set forth herein.

202.    Plaintiff and Latham entered into an employment contract.

203.    Plaintiff has violated the implied covenant of good faith and fair dealing contained in all South Carolina contracts through its actions and course of conduct.

204.    As a direct and proximate result of Plaintiff's breach of this implied covenant, Latham has suffered actual, resulting and consequential damages in an amount to be determined by the trier of fact.

### FOR AN ELEVENTH CAUSE OF ACTION
### (Negligence and Negligent Supervision)

205.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

206.    Plaintiff had a duty to train and supervise its officers and employees to prevent them from engaging in fraudulent and criminal activities and not to utilize employees to further those schemes and/or to refrain from using positions of power to threaten employees who question said schemes.

207.    Plaintiff has breached this duty in a manner that is negligent, willful, wanton, reckless, and/or grossly negligent.

208.    Latham has suffered actual and consequential damages as a direct and proximate cause of this breach. and is entitled to judgment as a matter of law to include actual and punitive damages in an amount to be determined by the trier of fact.

### FOR A TWELFTH CAUSE OF ACTION
### (Malicious Prosecution/Abuse of Process)

209.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

210.    That Plaintiff did initiate this false and malicious complaint about Latham, when both are aware that Latham is entitled to civil immunity, pursuant to the Defense of Trade Secrets Act.

211.    The use of this false and malicious complaint was brought for the improper purpose of preventing Latham from speaking about Plaintiff's alleged criminal and/or fraudulent business practices.

212.    Plaintiff was negligent, grossly negligent, careless, reckless, wanton, and/or alternatively acted intentionally to file this false and malicious complaint in filing this claim.

213.    That this action will be terminated in favor of Latham.

214.    That Plaintiff acted with malice in filing said Complaint and in seeking to have said civil proceedings instigated.

215.    That Defendants lacked probable cause to believe such a violation existed.

216.    Latham has suffered damages in the embarrassment, humiliation, missed time from work and family, and the stress and anxiety of having to defend herself, as well as reasonable attorney's fees and costs.

217.    Latham is entitled to actual, compensatory, and punitive damages, as a direct and proximate cause of Defendants' actions in this regard, to include special damages of reasonable attorney's fees and costs associated with the defense of this action.

## FOR A THIRTEENTH CAUSE OF ACTION
### (Injunctive Relief)

218.    The foregoing paragraphs of this Answer and Counterclaim are reaffirmed and realleged.

219.    That the Defendant Latham is entitled to injunctive relief prohibiting Plaintiff or Third-Party Defendant from contacting her, communicating with her directly, or coming within 100 yards of her home and place from work.

220.    That the Defendant Latham is entitled to injunctive relief prohibiting Plaintiff or Third-Party Defendant from using any information contained in Latham's personal emails, google drive, cloud storage, or any other private source of information illicitly accessed by Plaintiff and Golestan on or about May 7, 2018, including but not limited to non-work related private messages, financial information, social security numbers and birth dates, bank account numbers, and personal photographs.

221.    That the above information and/or communications would serve no useful purpose, is not related to the issues identified in this lawsuit or its counterclaims and exercising the same would only serve as a source of harassment and further invasion of privacy against this Defendant and would cause her irreparable harm.

222.    In the balancing of equities, enjoining such communications and/or the use of the above personal information of Latham would only harm Latham while serving Plaintiff and Golestan no useful purpose.

223.    Latham is likely to prevail on the merits of her case.

224.    Federal jurisprudence and public policy have a strong interest in protecting personal financial information and other personal information, not reasonably necessary for the parties to prosecute or defend their interests.

225.    Latham respectfully requests a preliminary and permanent injunction issue forth preventing the above communications and the use of said information and requiring Plaintiff and Golestan to return any such information in its possession.

WHEREFORE, having fully answered Plaintiff's Complaint, Defendant Latham prays Plaintiff's Complaint will be dismissed with prejudice, and further prays for judgment in her favor and against Plaintiff and Amir Golestan as follows:

a.     Judgment against Plaintiff and Golestan for an amount equal to Latham's unpaid wages, treble damages, attorney's fees and costs, pursuant to Judgment against the Plaintiff and Golestan for violations of the South Carolina Payment of Wages Act;

b.     Judgement against the Plaintiff and Golestan for violation of the Unfair Trade Practices Act, including actual and compensatory damages, treble damages, and reasonable attorney's fees and costs;

c.     Actual, consequential, special and punitive damages against Plaintiff and Golestan, including attorney's fees and costs for the remaining common-law, non-statutory causes of action;

d.     Declaratory Judgment for Latham allowing her to abandon the storage unity and the personal affects therein without fear of harm or suit from Plaintiff or Golestan;

e.     For an Order piercing the veil of Plaintiff Micfo, LLC;

f.     All such further relief as the Court deems just and equitable; and

g.     For preliminary and injunctive relief, as set forth above.


BREWER LAW FIRM, LLC

*/s/Barrett Brewer*

_____
Barrett R. Brewer
District of S.C. Federal Bar No.: 8081
Post Office Box 1847
Mount Pleasant, SC 29465
o: (843) 779-7454
f: (843) 779-7456
Email: barrett@brewerlawfirmsc.com


July 24, 2018
Charleston, South Carolina