IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| MICFO, LLC, | ) | |
|        Plaintiff, | ) | CASE NO.: 2:18-cv-01653-DCN |
| vs. | ) | |
| Victoria Latham and Erin Larkin, | ) | **DEFENDANT LATHAM'S MOTION FOR STATUS CONFERENCE** |
|        Defendants, | ) | |
| _____ | ) | |
| Victoria Latham and Erin Larkin | ) | |
|        Third-Party Plaintiffs, | ) | |
| vs. | ) | |
| Amir Golestan, Individually, | ) | |
|        Third-Party Defendant. | ) | |
| _____ | ) | |

      **NOW COME** the Plaintiffs, by and through their undersigned counsel, and file this Motion for an in-person and/or telephonic Status Conference of all Parties and This Hon. Court, pursuant to FRCP rule 16(a)(2), (3), and (5).

## **FACTS**

      Background, this matter was filed by Plaintiff on or about June 15, 2018, alleging, inter alia, a violation of the South Carolina Uniform Trade Secrets Act. Specifically, Plaintiff alleged that Defendants downloaded to their own personal devices certain corporate materials and information of the Plaintiff. Defendant Latham has admitted that such materials were downloaded, but that they were not violations of any state and/or federal law, pursuant to the Defense of Trade Secrets Act, as Latham alleges that the materials were downloaded and shared with the Federal Bureau of Investigation and her

1

undersigned counsel for the sole purpose of informing the proper authorities as to fraudulent corporate practices of the Plaintiff, related to the creation of sham corporate and individual identities used to defraud its own customers, vendors, and the American Register of Internet Numbers ("ARIN") is a nonprofit, member-based organization that administers IP addresses & ASNs in support of the operation and growth of the Internet[1]. Defendant Latham has also alleged various counterclaims back against Plaintiff and against its principal Golestan, as a Third-Party Defendant, mostly tied to the same underlying facts of Latham's defense, namely that Plaintiff and Third-Party Defendant are engaged in pervasive fraud.

     Early on in the litigation, and without, and prior to, the Parties even engaging in a FRCP 26(f) conference, or This Court even issuing a Scheduling Order, the Parties jointly advised the court that they were making efforts to resolve this matter by way of an early exchange of the alleged corporate data and documents which Plaintiff alleges Defendants to of taken, and to inspect the metadata, via Plaintiff's own forensic expert, Rosen Litigation Technologies, in order to confirm that the data was not taken and provided to any competitors and/or sources other than those which Defendants have previously represented.  See Ex. A, email chain of Oct. 10, 2018 – Dec. 15, 2018, between Lisa Richberg, USDC, and counsel for Parties, wherein Plaintiff's counsel indicated they needed four (4) weeks to review the ESI.  Upon information and belief all electronic data of the Defendants has been submitted to Plaintiff's expert, John Akerman, Esq., Rosen litigation technology consulting Inc., on or about December 7, 2018, who has in turn

---

[1] ARIN is the successor entity of Defense Advanced Research Projects Agency ("DARPA"), regarding the administration of IP addresses & ASNs.

submitted the same to Plaintiff and his counsel for review. See Ex. B, emails between Attorney Brewer and Plaintiff's Expert Akerman, Dec. 6-7, 2018.

Significant to both this Motion and the Defendants entering into this attempt at resolution was the notion that both Defendants had a significant defense(s), acting as a bar to Plaintiff's claims, and that, as young women, Defendants did not have significant financial resources to engage in federal court litigation. Therefore, if Plaintiff's case was on shaky footing and a resolution could be reached early without the expenditure of significant litigation monies by the Defendants, then the same would benefit both Parties[2].

Since December 7, 2018, counsel for the Defendants have reached out to Plaintiff's counsel on numerous occasions to ask the status of Plaintiff's review of documents and electronic data submitted to Plaintiff's expert, and to gauge the status of a resolution. After each such communication by defense counsel, Plaintiff's counsel responded that our messages had been conveyed to the Plaintiff and they would be back with us "soon". See Ex. C, February 12, 2019, email between Attorney Brewer and Attorney McElwaine, regarding communication regarding status of settlement negotiations. It has now been three months since the documents and electronic data were produced to Plaintiffs and it has been three months without any solid indication of where this process is going.

In the meantime Defendant Latham has become aware of two matters, which she believes is causing Plaintiff/Third-Party Defendant (both of whom are the alter-ego of the same person, Amir Golestan) to both intentionally delay reviewing the very documents

---

[2] Counsel for both the Plaintiff/Third-Party Defendant and both Defendants are grateful to The Court for its patience and cooperation in this regard.

and electronic data Defendants provided, and to intentionally delay making any effort to resolve this matter as had been previously represented to the Court.

### ARIN Litigation

The first issue involves Plaintiff's litigation with ARIN. On or about December 6, 2018, the day before Plaintiff received Latham's electronic data in this case, ARIN attorneys wrote Nelson Mullins accusing Plaintiff of fraud, by means of false and fabricated documents of fake alias or shell/shelf entities, by means of forged signatures and fake documents, with the intent of fraudulently obtaining IP addresses to monetize and re-sell on a secondary market. See Ex. D Verified Complaint of *OppoBox, LLC, et. al. [a/k/a Micfo/Golestan] v. ARIN*, Dec. 20, 2018, Ex. N to the Verified Complaint.

As a result of this letter, Plaintiff and Third-Party Defendant, through its other fictional shell/shelf corporations and alter egos filed a lawsuit through their undersigned legal counsel, Nelson Mullins, in the United States District Court for the Eastern District of Virginia (Alexandria Division), *OppoBox, LLC, et. al, v. ARIN,* Case No.: 1:18-cv-01572, on or about December 20, 2018, in which it was alleged that the Plaintiff entities in that case were simply in alter ego (or "related corporate entity of Micfo,") of Plaintiff Micfo, and that Plaintiffs alter egos were seeking injunctive relief against ARIN. See Ex. D Verified Complaint of OppoBox, LLC, et. al. [a/k/a Micfo/Golestan] v. ARIN, Dec. 20, 2018.

On or about December 21, 2018, and injunction hearing was held in Alexandria, VA, attended by Plaintiff's underlying counsel Nelson Mullins Riley & Scarborough, LLC, in which Defendant ARIN, through its underlying counsel, attorney Stephen Ryan, Esq., McDermott Will & Emery, LLP, opposed the Plaintiff's motion for injunctive relief by providing its own evidence, corroborated by Defendant Latham's corroborating

4

allegations and Micfo's admissions in this case, that Micfo/Golestan had committed fraud and lied to the Court.

> MR. RYAN [ARIN attorney]: I'm not going to rest on this South
> Carolina stuff. **The South Carolina stuff is a third party's [Latham's]**
> **corroboration of the fraud,** **but I have real proof of an**
> **extensive fraud that is at least a $10 million fraud that**
> **you're being asked to grant a TRO to protect**.
> And I think when somebody comes into court like this,
> they've opened themselves up now to a proceeding where,
> candidly, **they have lied to the Court** …

See Ex. E Transcript of Injunctive Hearing with the Hon. Brinkema, Case No.: 1:18-cv-01572, Dec. 21, 2018, (pg. 11, ln. 11-18) (emphasis added).  While Defendant Latham was aware of Plaintiff/Third-Party Defendant's fraud, ARIN has a precise understanding of Golestan's fraud.  ARIN then described the exact fraud that Micfo/Golestan admitted to in this case as follows:

> MR. RYAN: Because it weighs on the Court that
> really -- we set up arbitration as the mechanism. Every
> contract here is false. It was with an alias or a person who
> didn't exist. We were induced to contract with someone who
> doesn't exist, and we would never have given the addresses to
> them.
> Let me explain the value of the addresses to the
> Court, and if –
>
> MR. RUGGIO [Nelson Mullins]: I'm going to object, Your Honor, because
> I think at this point, Your Honor, you've made a ruling, and
> we'll consider whether we'll file for a rehearing on that, but
> I think really have objection to Mr. Ryan going on about things that I
> can't be present to challenge it in person.
>
> THE COURT: Well, you're present on the phone, and
> you have a good, strong voice, so we're hearing you loud and
> clear. I'm going to let Mr. Ryan finish.
> Go ahead, Mr. Ryan.
>
> MR. RYAN: Let me just finish. When the Internet was
> created, there were 4 billion numbers that were 32-bit
> combination numbers. There are only 4 billion possible 32-bit

> numbers. That's what IPv4 is, Internet Protocol version 4. We're now issuing Internet Protocol version 6, and we will be using that for 300 to 1,000 years.
>
> In this interregnum period where people are switching from v4 to v6, the v4 addresses have monetary value, and ARIN created a transfer market where someone who is a legitimate holder of resources, which the Plaintiff is not, can sell the rights to those numbers to others.
>
> **The Plaintiff has already transferred numbers to China and Saudi Arabia in the, in the recent past. Those numbers are in all likelihood blocks that should never have been granted to them, but they've monetized it**, and one of the agreements that I had with counsel in writing is that they would tell us what was the monetary value they derived from those blocks, and I will tell you that based on the number of resources, it's what we call a /16, which is 65,000 numbers. Each number is worth no less than $10 an address, and right now, I'm told the market price is 19 to 20. **So if you multiply the 65,000 in that one block that was transferred out to China and Saudi Arabia, you can see the profit that is made by selling the addresses by a party who has defrauded us to obtain them. So if anyone should be asking for a restraining order here, it's my client**.
>
> **Now, the problem with the, with the arbitration clause, it's arbitration in a contract that is fraudulently obtained in a sense**, and they've brought that issue on before you.

See Ex. E Transcript of Injunctive Hearing with the Hon. Brinkema, Case No.: 1:18-cv-01572, Dec. 21, 2018, (pg. 13, ln. 14 – pg. 15, ln.11) (emphasis added). As a result of this hearing and the Court's admonition of the Micfo entities, the OppoBox/Micfo Entities voluntarily dismissed their lawsuit against ARIN.  See Ex. F, OppoBox, LLC/Micfo, LLC, Voluntary Dismssal.  Upon information and belief, the FBI has moved forward with its investigation of Micfo/Golestan, going so far as to interview Defendant Latham as recently

as within the last month, and going so far as to ask Defendant Larkin for a future interview on the matter, just last week.

### Golestan Marital Litigation

On or about December 14, 2018, Kristin Golestan, filed an action for divorce against Third-Party Defendant Amir Golesatan. The complaint alleged in detail:

> 7.      Defendant has a violent temper and often goes into fits of rage without just cause or provocation. During these rages, he is very threatening, he is emotionally and verbally abusive, he is irrational and unpredictable toward Plaintiff, the children of the Parties, and others. When Defendant goes into these fits of rage, Plaintiff becomes in fear of her safety, and the safety of others, from Defendant. Defendant, when he becomes angry and abusive, periodically loses control and takes his anger out on Plaintiff and the children of the Parties. Defendant has threatened to divorce Plaintiff on many occasions.

See. Ex. G, Complaint of *Golestan v. Golestan*, Case No.: 2018-DR-10-4289, Charleston County Court of Common Pleas, filed Dec. 14, 2018. And that:

> 48.     Defendant has dual citizenship between the United States of America and Iran. Plaintiff [Kristn Golestan] is fearful that Defendant will attempt to remove the children from the United States of America as he has threatened to do so.

See. Ex. G, Complaint of *Golestan v. Golestan*, Case No.: 2018-DR-10-4289, Charleston County Court of Common Pleas, filed Dec. 14, 2018.

### Basis for Status Conference

FRCP 16(a) allows for the Court to order a Status Conference in order to either expedite the disposition of the action, to establish continuing controls of the case will not

7

be protracted because of lack of management, and to facilitate settlement. All counsel have record have made affirmative representations to This Court, that the early exchange of electronic data between the Parties would be used to facilitate an early and orderly discussion about possible resolution of the case.

While Defendant Latham believes that Nelson Mullins, the attorneys for Plaintiff and Third-Party Defendant, have made good faith efforts to contact their clients and to work towards a resolution, which would be in the best interests of all Parties, Latham believes Plaintiff/Third-Party Defendant Micfo/Golestan, is intentionally delaying its/his own counsel's efforts to work toward resolution, in direct contradiction of what was relayed to the Court. This is likely due to the concurrent, related legal actions and FBI investigations, that Plaintiff/Third-Party Defendant is now engulfed in, due to its/his admitted fraud.

Defendant Latham has regularly followed up with Plaintiffs counsel and has even made a specific demand for resolution to Plaintiffs and Third-Party Defendants on January 31, 2019. While counsel for Plaintiff and Third-Party Defendants has replied to the Defendants that Plaintiff has received the demand and that it was passed it on to the client, Plaintiff's counsel has indicated repeatedly that they are waiting on a response from for their client, with no indication of whether the offer has been accepted or rejected. This has been a repeated refrain for over three months now from Micfo/Golestan counsel, without any indication that resolution can or cannot be obtained.

We believe this matter can still be resolved, in the best interests of all Parties involved, without the necessity for lengthy and expensive discovery and motions practice. Therefore, we are respectfully requesting that the Court hold a status conference to help

the Parties determine whether continued settlement negotiation/mediation would be warranted at an early stage, or whether a 26(f) conference and/or scheduling order should be issued and the Parties should proceed forward with litigation.

                        BREWER LAW FIRM, LLC

                        */s/Barrett Brewer*

                        _____
                        Barrett R. Brewer
                        District of S.C. Federal Bar No.: 8081
                        Post Office Box 1847
                        Mount Pleasant, SC 29465
                        o: (843) 779-7454
                        f: (843) 779-7456
                        Email: barrett@brewerlawfirmsc.com
                        Attorney for Victoria Latham

March 12, 2019
Charleston, South Carolina