<pre>
                                                                      1

              UNITED STATES DISTRICT COURT
           FOR THE EASTERN DISTRICT OF VIRGINIA
                   ALEXANDRIA DIVISION

OPPOBOX, LLC, et al.,        .    Civil Action No. 1:18cv1572
                             .
              Plaintiffs,    .
                             .
      vs.                    .    Alexandria, Virginia
                             .    December 21, 2018
AMERICAN REGISTRY FOR        .    11:08 a.m.
INTERNET NUMBERS, LTD.,      .
                             .
              Defendant.     .
                             .
 .  .  .  .  .  .  .  .  .  .

                TRANSCRIPT OF TRO HEARING
         BEFORE THE HONORABLE LEONIE M. BRINKEMA
              UNITED STATES DISTRICT JUDGE

APPEARANCES:

FOR THE PLAINTIFFS:          MICHAEL F. RUGGIO, ESQ.
  (telephonically)           Nelson Mullins Riley &
                             Scarborough LLP
                             101 Constitution Avenue, N.W.
                             Suite 900
                             Washington, D.C. 20001


FOR THE DEFENDANT:           STEPHEN M. RYAN, ESQ.
                             JOSHUA D. ROGACZEWSKI, ESQ.
                             SAM C. NEEL, ESQ.
                             McDermott Will & Emery LLP
                             The McDermott Building
                             500 North Capitol Street, N.W.
                             Washington, D.C. 20001-1531


OFFICIAL COURT REPORTER:     ANNELIESE J. THOMSON, RDR, CRR
                             U.S. District Court, Third Floor
                             401 Courthouse Square
                             Alexandria, VA 22314
                             (703)299-8595


                     (Pages 1 - 19)

       COMPUTERIZED TRANSCRIPTION OF STENOGRAPHIC NOTES
</pre>

Exhibit E

2

1            P R O C E E D I N G S
2            THE CLERK:  Civil Action 18-1572, Oppobox, LLC, et
3  al. v. American Registry for Internet Numbers, Ltd.  Would
4  counsel please note their appearances for the record.
5            THE COURT:  Mr. Ruggio, you're appearing via
6  telephone; is that correct?
7            MR. RUGGIO:  Yes, Your Honor, and I have to mention,
8  Your Honor, that I called at 9:45 this morning, Your Honor, to
9  make sure that I would know when a hearing would be set up, and
10 I was told by the Clerk's Office they would contact me back.
11 At that point, it had been scheduled with Judge Ellis.
12           And I just got notification it was transferred to
13 you.  No one's ever notified us whatsoever.  We've been waiting
14 here all morning to get a call that would say:  We're going to
15 have a hearing; get over here right away.  We would have
16 immediately been there.
17           THE COURT:  Well, I'm not going to get into it with
18 you, but I will tell you whatever phone number was first given
19 to the Clerk's Office, we couldn't use.  It didn't work.  But
20 in any case, you're on the phone.  We're going to address this
21 matter at this point.
22           It's been transferred to us.  Judge Ellis recused
23 himself from hearing this case.  I don't know why, but anyway,
24 we've got it.  It was randomly reassigned to this Court.
25           And for the defense?

3

1  MR. ROGACZEWSKI: Thank you, Your Honor. Joshua
2  Rogaczewski, McDermott Will & Emery, LLP, for ARIN, the
3  defendant. I'm here with my partner, Steve Ryan, and my
4  colleague, Sam Neel. Prior to the hearing, I did move for
5  their admission pro hac vice.
6  THE COURT: I've already signed the paperwork.
7  Mr. Ryan, it's nice seeing you in court again.
8  MR. RYAN: Your Honor, it's a true pleasure to be
9  back in your court, although perhaps not the day before the
10 holiday. Thank you.
11 THE COURT: All right.
12 MR. ROGACZEWSKI: Thank you, Your Honor. So Mr. Ryan
13 will handle the hearing for ARIN, if that's okay.
14 THE COURT: All right, that's fine.
15 Well, I've had a chance to very quickly go over the
16 complaint, the motion for the temporary restraining order. I
17 have also looked at only some of the exhibits. The ones that I
18 was particularly interested in, frankly, were L, M, and N. I
19 also have briefly looked at Exhibit I, which appears to be, as
20 I understand it, the standard Registration Services Agreement
21 between the parties. I'm told at least from the paperwork that
22 apparently this is pretty uniform for all of the plaintiffs.
23 I note that with the exception of seeking injunctive
24 relief, any dispute between you-all needs to go to arbitration,
25 if I read that correctly in the agreement.

4

1         MR. RUGGIO:  That's correct, Your Honor.
2         THE COURT:  All right.  So we're before the Court.
3    Now, I'm very intrigued, and I'll let Mr. Ryan actually start,
4    so tell me about the litigation in South Carolina.
5         MR. RYAN:  Oh, Your Honor, this is very interesting.
6    Can I pass up two exhibits so that you can actually read the
7    pleading in the South Carolina court as we're discussing it?
8         THE COURT:  Only because we don't have the plaintiff
9    here to also look at it at the same time, can't you just give
10   me a good executive summary?
11        MR. RYAN:  Absolutely, Your Honor.
12        THE COURT:  All right.
13        MR. RYAN:  Let me, let me do that.  Your Honor, in
14   the South Carolina case -- and I will tell you, by the way, let
15   me just put in context we discovered the fraud in this case
16   independently and then went and found the South Carolina case.
17   In other words, the South Carolina case did not trigger our
18   finding of the fraudulent activities on the part of the
19   plaintiff.
20        THE COURT:  Okay.
21        MR. RYAN:  If we'd go to the South Carolina
22   pleadings, the plaintiff, Mr. Golestan, sued his former
23   employee.
24        THE COURT:  Right.
25        MR. RYAN:  That former employee in her counterclaim

5

1   and answer, at paragraph 129 and paragraph 130 of her answer to
2   his attack on her, those paragraphs indicate that the person
3   whose affidavit has been proffered by the plaintiffs in this
4   case, Mr. Golestan, actually has a pattern of defrauding my
5   client, ARIN, by creating false paperwork by alias people who
6   don't exist, that are made up out of whole cloth, and this
7   young woman was ordered to notarize the documents that we
8   require to ensure that people understand that they shouldn't be
9   trying to defraud us in getting the resources.
10          We hand out these resources, and she was, in essence,
11  being used as part of the scheme and artifice to defraud by
12  creating the notary seals on the false documents for the
13  aliases.
14          I think actually there's four paragraphs, two
15  paragraphs in her, her document, and two paragraphs in the
16  answer.  The reason I want to read the paragraphs of the
17  allegation of the answer is because the plaintiff has,
18  unbelievably, admitted the fraud in their answer.  It's an
19  admitted fact, and therefore, what the Court has here today,
20  when I read you these paragraphs, you'll see -- I have never in
21  38 years seen somebody come into a court of equity with as
22  unclean a set of hands and who's actually now trying to defraud
23  you in addition to the fact that we've been defrauded, and I
24  can prove that.  I have a witness I'm prepared to put on today
25  to that effect.

```
                                                                   6
 1              But let me read you two paragraphs.  It's less than
 2   half a page.
 3              THE COURT:  All right.
 4              MR. RYAN:  All right.  So I'm reading from
 5   Ms. Latham's response:  Upon information and belief, plaintiff,
 6   that is, the affiant in this case, attempted to fraudulently
 7   grow its channel partner network by creating sham or straw
 8   channel partners.  These sham companies have nonexistent
 9   individuals listed as the officers of the company -- companies,
10   plural.  For example, two of the plaintiff's channel partners,
11   Oppobox, which is the plaintiff in this case, and Fiber Galaxy,
12   are actually pure alter egos of the plaintiff.  That's
13   Mr. Golestan.  The officers of Oppobox and Fiber Galaxy,
14   respectively, Kevin Chang and Pooya Torabi, are not real
15   people, despite the fact that these straw persons have apparent
16   authority to act for these entities.  E-mails to Chang and
17   Torabi are actually received by officers of Micfo, which is
18   Mr. Golestan's company where they're rolling the resources up
19   to him.  When Chang and Torabi sent e-mails, they are actually
20   generated by officers of the plaintiff.  It is believed the
21   plaintiff has approximately ten alter ego channel partners that
22   it fraudulently misrepresents to the world as being separate
23   and independent companies run by real, existing people not
24   associated with the plaintiff.  That's paragraph 129.
25              Now, I'll read paragraph 130, and that's the last
```

7

1  paragraph I'll read from this:
2          Upon information and belief, the sham channel
3  partners solve at least two problems for plaintiff.  They
4  provide plaintiff's client with a false sense of security,
5  while plaintiff retains all the profits and fees for the
6  service of these channel partners, and it diversifies
7  plaintiff's risk if ARIN revokes certain agreements,
8  licensures, and/or IP addresses of plaintiff or its channel
9  partners.  Given the diversification of channel partners, if
10 one goes down, then the remaining undisciplined channel
11 partners and/or plaintiff can continue to provide uninterrupted
12 connectivity services to these illicit web companies, i.e.,
13 spam or criminal enterprises, or even legitimate clients, and
14 continue to profit from the same.
15         Now, you don't need to actually believe her because
16 if you ask plaintiffs' counsel, because he's a barred member of
17 this Court, I believe he's going to have to admit that it's
18 true, but I actually have his pleading for his client in South
19 Carolina, and there are two paragraphs.  This is his -- Micfo's
20 answer to defendant Latham's counterclaims, two paragraphs,
21 paragraph 13 and paragraph 20.  They're shorter paragraphs,
22 Your Honor.
23         Paragraph 13.  Answering paragraph 129 of Latham's
24 answer, Micfo admits that Kevin Chang and Pooya Torabi are
25 aliases, the e-mails sent to Chang and Torabi are received by

8

1   employees of Micfo, and that the e-mails sent from the aliases
2   Chang and Torabi are sent by employees of Micfo.
3           The last sentence is a general denial:  Micfo denies
4   the remaining allegations, express or implied, in the
5   paragraph.
6           So he -- the plaintiff in this case, who had the
7   temerity to put an affidavit before you in this court to
8   convince you as a court of equity to rule in his favor, not one
9   word in their pleadings in a sense about this South Carolina
10  matter, in the South Carolina matter.
11          But let me read paragraph 20.  Answering paragraph
12  137 of Latham's -- oh, wait, I'm sorry.  I'm in the wrong
13  place.  14?  I'm sorry.
14          MR. RUGGIO:  Your Honor, can I object for a minute,
15  Your Honor?  Because it's kind of bizarre to me, Your Honor,
16  that we're dealing with a case in South Carolina which is
17  historical.  What this has been brought on for is an
18  anticipatory breach by the defendant by threatening to revoke
19  everything.
20          We've been trying to work with this defendant over
21  the last several weeks to try and see how we can resolve some
22  of these things, and we even up until yesterday attempted to do
23  so, Your Honor.  The reason this action is before you, Your
24  Honor, is because defendant has been adamant by threatening a
25  revocation of everything across the board, and they have never

9

1  at this point, never in weeks of going forward mentioned this
2  case, bringing this up.
3          We've been very transparent with the defendant across
4  the board.  What we seek and we're trying to do is trying to
5  keep a status quo such that we could try and see if there's
6  possibility to resolve or arbitrate this case.  That's always
7  been our intention, even up until yesterday evening.
8          It's when Mr. Ryan was adamant by the fact that he
9  was not going to give that assurance that we had to protect our
10 clients' interest across the board because he has the power as
11 a monopoly to cut everything off no matter what has happened.
12         THE COURT:  Well --
13         MR. RUGGIO:  And all we've attempted to do here, Your
14 Honor, is try to stop that process until we can get to a point
15 we can arbitrate pursuant to the agreement the terms of this
16 situation.
17         THE COURT:  Here's my concern, because, again, I've
18 had roughly maybe 45 minutes to try to get up to speed in this
19 case:  Paragraph 2(d) of your agreement includes as prohibited
20 conduct to violate any applicable laws, statutes, rules, or
21 regulations.
22         This whole area of the Internet and the cloud and I,
23 frankly, have never heard of fog service, but gives me great
24 concern when I'm hearing that there may be false names,
25 nonexistent entities, that sort of thing.  There's been now

10

1   some brief reference to the possibility of any kind of criminal
2   conduct that may be conducted across these Internet portals.
3   That is such murky business that sitting as a court in equity,
4   I'm not at this point going to go ahead and grant any kind of a
5   restraining order because I simply don't have enough
6   information.
7           My understanding is the defendant, Mr. Ryan, is a
8   nonprofit; is that correct?
9           MR. RYAN: Yes, ma'am. We're a nonprofit. We're
10  located in Chantilly, Virginia, and we're one of five utilities
11  around the world that do this, so our organization takes care
12  of Canada, the United States, and all of the English and French
13  islands of the Caribbean. It's about a
14  20-25-million-dollar-a-year operation. We have about 70
15  employees, about 70 employees.
16          If you want to think about what we are, Your Honor,
17  DARPA invented the Internet. The National Science Foundation
18  took over the operation. The National Science Foundation is my
19  mother on this. She mothered it out to us. We took it over,
20  and industry is running it.
21          Let me say something --
22          THE COURT: It's like ICANN and those other private
23  entities that are doing what used to be a quasi-governmental
24  function.
25          MR. RYAN: That's exactly right, but ours is

```
                                                                    11
 1   different, Your Honor, because ICANN had the domain companies
 2   like VeriSign --
 3             THE COURT:  Right.
 4             MR. RYAN:  -- who monetized it.
 5             We stayed true to our mission.  We've never monetized
 6   it.
 7             Let me -- I think the Court has gone to the right
 8   place, but the fraud here is worthy of you understanding.  If I
 9   can give -- give me a few minutes.
10             THE COURT:  Go ahead.
11             MR. RYAN:  I'm not going to rest on this South
12   Carolina stuff.  The South Carolina stuff is a third party's
13   corroboration of the fraud, but I have real proof of an
14   extensive fraud that is at least a $10 million fraud that
15   you're being asked to grant a TRO to protect.
16             And I think when somebody comes into court like this,
17   they've opened themselves up now to a proceeding where,
18   candidly, they have lied to the Court as a --
19             MR. RUGGIO:  I object, Your Honor.
20             THE COURT:  Wait.
21             MR. RUGGIO:  There is nothing -- there is nothing at
22   all that we've ever lied to about this Court about anything,
23   Your Honor.  Mr. Ryan is mischaracterizing and misrepresenting
24   to this Court all of these things.  Everything we put in these
25   filings is totally accurate and true.
```

12

1    What Mr. Ryan wants to do, he's muddied this whole
2    thing up -- and I kind of feel at a disadvantage not being able
3    to be there, Your Honor -- in any way he can to try and control
4    the situation where he can revoke or threaten to revoke anyone
5    and maybe set a new standard where they as a monopoly can
6    really run roughshod over anybody they give out IP addresses
7    to.
8         THE COURT: All right. Well, look.
9         MR. RUGGIO: This is totally inappropriate.
10        THE COURT: Here is the situation: Again, as I've
11   said, I am a court sitting in equity. You have to convince the
12   Court at this point -- and the burden is on you, not on the
13   defendant -- that you're entitled to this extraordinary relief,
14   which courts are very reluctant to grant. I am not satisfied
15   that you have convinced me of a likelihood of success on the
16   merits.
17        I read -- as I said, the key exhibits that I read, in
18   my view, showed recalcitrance on your part to provide the
19   defendant with the information they were requesting, which
20   struck the Court as being reasonable information. I think you
21   claimed it was proprietary or, you know, information, and based
22   upon what I have in the record before me, I don't even need to
23   hear anything more from Mr. Ryan at this point. The motion for
24   a temporary restraining order is denied.
25        Now, down the road, if you want to revisit this

13

1  issue, next week is a difficult week.  I am here but staff is
2  thin.  If something else is presented to the Court, we'll take
3  a look at it, but at this point, I've denied the motion.
4  That's the only issue that's before me right now.
5          Obviously, there's nothing that prevents the parties
6  from resolving their dispute.  If it can't be resolved, then
7  we'll probably see you down the road, but because this case
8  does appear -- the ultimate issues in this case would appear to
9  be only subject to arbitration, this case may not last very
10 long on the docket.
11         MR. RYAN:  Can I, can I say something, though, about
12 the arbitration issue?
13         THE COURT:  Yeah.
14         MR. RYAN:  Because it weighs on the Court that
15 really -- we set up arbitration as the mechanism.  Every
16 contract here is false.  It was with an alias or a person who
17 didn't exist.  We were induced to contract with someone who
18 doesn't exist, and we would never have given the addresses to
19 them.
20         Let me explain the value of the addresses to the
21 Court, and if --
22         MR. RUGGIO:  I'm going to object, Your Honor, because
23 I think at this point, Your Honor, you've made a ruling, and
24 we'll consider whether we'll file for a rehearing on that, but
25 I think at this point, you've made a ruling, Your Honor.  I

                                                                14
1    really have objection to Mr. Ryan going on about things that I
2    can't be present to to challenge it in person.
3            THE COURT:  Well, you're present on the phone, and
4    you have a good, strong voice, so we're hearing you loud and
5    clear.  I'm going to let Mr. Ryan finish.
6            Go ahead, Mr. Ryan.
7            MR. RYAN:  Let me just finish.  When the Internet was
8    created, there were 4 billion numbers that were 32-bit
9    combination numbers.  There are only 4 billion possible 32-bit
10   numbers.  That's what IPv4 is, Internet Protocol version 4.
11   We're now issuing Internet Protocol version 6, and we will be
12   using that for 300 to 1,000 years.
13           In this interregnum period where people are switching
14   from v4 to v6, the v4 addresses have monetary value, and ARIN
15   created a transfer market where someone who is a legitimate
16   holder of resources, which the plaintiff is not, can sell the
17   rights to those numbers to others.
18           The plaintiff has already transferred numbers to
19   China and Saudi Arabia in the, in the recent past.  Those
20   numbers are in all likelihood blocks that should never have
21   been granted to them, but they've monetized it, and one of the
22   agreements that I had with counsel in writing is that they
23   would tell us what was the monetary value they derived from
24   those blocks, and I will tell you that based on the number of
25   resources, it's what we call a /16, which is 65,000 numbers.

15

1   Each number is worth no less than $10 an address, and right
2   now, I'm told the market price is 19 to 20.  So if you multiply
3   the 65,000 in that one block that was transferred out to China
4   and Saudi Arabia, you can see the profit that is made by
5   selling the addresses by a party who has defrauded us to obtain
6   them.  So if anyone should be asking for a restraining order
7   here, it's my client.
8           Now, the problem with the, with the arbitration
9   clause, it's arbitration in a contract that is fraudulently
10  obtained in a sense, and they've brought that issue on before
11  you.  So I do think the proper resolution here is for the Court
12  to order the following:
13          Point 1, that they be ordered to produce the customer
14  list and customer coordinates:  the address, the telephone
15  number of those -- of the customers of all of the businesses
16  who are the plaintiffs.
17          We will agree to receive that under any appropriate
18  nondisclosure agreement.  In other words, we will not disclose
19  that to any third party, but I do want to tell the Court that
20  if the Court orders them to turn that over to us, we will do
21  what we always do when we get such a list.  We'll randomly
22  choose people and try and find out if there's really a person
23  there.
24          Now, let me tell you why I care about that.  If we
25  have a defrauding party who's the ISP or service provider like

```
 1   the plaintiff, there may be real parties who depend on their
 2   services.  I'd like to find that out.  The only reason we
 3   haven't revoked to date is because I was asking for that
 4   information first from the company itself and then from me to
 5   see if we could get that, and that's why I think the Court
 6   having jurisdiction of the TRO/PI matter should ask for the
 7   production of those materials subject to an appropriate
 8   protective order to us so we can find out if there really are
 9   customers there.
10            The second thing that I think the Court should order
11   is that Mr. Golestan sit for a deposition within this district,
12   having subjected himself to the Court's jurisdiction with his
13   affidavit, for a period of eight hours so that we can put
14   documents to him and he can confirm under oath that those
15   persons don't exist and are aliases.
16            MR. RUGGIO:  Your Honor, I'm going to object to both
17   of those things.  He's bringing on all kinds of desires and
18   claims that he wants on a TRO that you've already ruled on,
19   Your Honor.
20            THE COURT:  I will tell you this:  Because your
21   concern, your concern -- and that's what you've got in your, in
22   your motion -- is potential injury to customers who are using
23   your service, he's given you an opportunity to avoid that
24   problem.  To the extent you've got legitimate customers who are
25   relying on the fog or the cloud or whatever the services that
```

17

1   you-all make possible, you can avoid that problem by complying
2   with his request.  The fact that it would be under a
3   nondisclosure agreement should give you adequate protection if
4   you're acting in good faith.
5             So at this point, I think it's not an unreasonable
6   request.
7             MR. RYAN:  Your Honor, I'll go further.  Let me --
8   it's like a Ginsu knife.  Let me add to the deal.  I literally
9   will not revoke anything until we receive that list, take that
10  deposition.  I won't take advantage of the fact that there's no
11  TRO today until I know whether there are customers there if
12  your order comes down.  If not, I have to make a more difficult
13  decision of how to proceed because they've refused to provide
14  that.
15            The third element, Your Honor, is I want them to tell
16  us how much money was obtained in return for the resources that
17  have previously been transferred to China and to Saudi Arabia
18  so the Court will have a data point of what the monetary value
19  of these numbers is to judge the nature of the fraud that we're
20  dealing with.  It's, it's -- they literally made this money on
21  a specific set of blocks.  That will tell the Court what the
22  portfolio of numbers is worth and what the fraud was worth, and
23  I'm representing to the Court that it's more than $10 million.
24  Somewhere between 10 and 20 million dollars is the nature of
25  the fraud.

```
                                                                    18
 1              This is not a small case.  And the importance to the
 2   Internet of this is nobody's ever come into court like this for
 3   a TRO against us.  In fact, nobody in 20 years has ever asked
 4   for an arbitration.  This is the first.  And so people are
 5   going to pay attention to what happens here and how someone --
 6   how the Internet really operates from it.
 7              Thank you, Your Honor, for hearing me.
 8              MR. RUGGIO:  Your Honor, I'm going to object to the
 9   request of Mr. Ryan.  I don't think we're here for this.  I
10   don't see how this is applicable to the TRO, and I don't see
11   where the Court is in a position to order these things, Your
12   Honor.
13              My, my client doesn't -- he's not a resident here.
14   He may subject himself pursuant to the filing, but to order a
15   deposition, to order these specific productions, the Court is
16   making decisions on what Mr. Ryan is saying to you and just
17   taking what he's saying to you at face value, Your Honor.
18              THE COURT:  You understand, though, your position has
19   just totally undercut the equitable argument that somehow your
20   client would be, you know, harmed to a degree that can't be
21   remediated.  I mean, you've been offered the opportunity to
22   keep these channels open with what seems to the Court to not be
23   unreasonable requests, but since you're not willing to accept
24   them, my ruling today is simple:  The motion for a temporary
25   restraining order is denied.
```

                                                                     19

1                I'm not going to order the rest of this because
2    you're not willing to comply with it.  I don't want to set you
3    up so that you're in contempt.  And that's where this case
4    lies, all right?
5                So I'm going to deem, however, it to have been served
6    upon the defendant.
7                MR. RYAN:  You may do so, Your Honor.
8                THE COURT:  All right.  So defendant has been served,
9    and, of course, we're the Rocket Docket.  That means things
10   will start moving very quickly, all right?  Thank you.  We're
11   recessing court for the day.
12               MR. RYAN:  Thank you, Your Honor.  Have a nice
13   holiday.
14               MR. RUGGIO:  Thank you, Your Honor.
15                         (Which were all the proceedings
16                          had at this time.)
17
18                     CERTIFICATE OF THE REPORTER
19        I certify that the foregoing is a correct transcript of
20   the record of proceedings in the above-entitled matter.
21
22
23                                   _____/s/_____
                                         Anneliese J. Thomson
24
25